1  **THOMPSON COBURN LLP**
   **LUKAS SOSNICKI, CSB 295895**
2  **lsosnicki@thompsoncoburn.com**
   **10100 Santa Monica Blvd., Suite 500**
3  **Los Angeles, California 90067**
   **Tel: 310.282.2500 / Fax: 310.282.2501**
4

5  **THOMPSON COBURN LLP**
   **MICHAEL L. NEPPLE** *(pro hac vice forthcoming)*
6  **mnepple@thompsoncoburn.com**
   **ALAN H. NORMAN** *(pro hac vice forthcoming)*
7  **anorman@thompsoncoburn.com**
   **THADDEUS J. BLENKE**
8  **tblenke@thompsoncoburn.com** *(pro hac vice forthcoming)*
   **One US Bank Plaza**
9  **St. Louis, MO 63101**
   **Tel: 314.552.6000 / Fax: 314.552.7000**
10

11 Attorneys for Plaintiff
   JLC-TECH LLC
12

13

14              **UNITED STATES DISTRICT COURT**

15           **SOUTHERN DISTRICT OF CALIFORNIA**

16

17 JLC-TECH LLC,                    CASE NO.    **'25CV0015 GPC JLB**

18          Plaintiff,              **COMPLAINT FOR COPYRIGHT**
                                    **INFRINGEMENT AND PATENT**
19      v.                          **INFRINGEMENT**

20 LUMINOUS GLOBAL INC.,            **DEMAND FOR JURY TRIAL**

21          Defendant.

22

23

24

25

26

27

28

33421451.2

Plaintiff JLC-Tech LLC ("JLC") for its complaint for copyright and patent infringement against Defendant Luminos Global, Inc. ("Luminos Global"), states as follows:

## NATURE OF THE CASE

1. For more than 10 years, JLC has been a global leader in unique and useful lighting solutions for commercial spaces. JLC has developed numerous LED lighting fixtures that maximize the energy saving qualities of LEDs and marry them to modern, creative, and structurally integrated designs. As a leading innovator in this area, JLC has received more than 35 patents worldwide for its lighting fixture technologies, including U.S. Patent No. 10,508,805 and U.S. Patent No. 11,732,878. Additionally, JLC has multiple pending patent applications.

2. JLC's investment into its innovation has contributed to the success of its products. In one exemplar, JLC's patented LED technology replaces the "t-bar" in suspended grid ceilings with a LED light. JLC's patented LED technology, as installed, appears as follows:



*Minimize building materials and waste, save energy and reduce installation costs with the T-BAR LED* The only lighting product that is designed, approved, and patented to replace the cross members in a suspended grid ceiling system.

3. On information and belief, Luminos Global is aware of JLC's issued and pending patent portfolio and copied or imported copies of JLC's innovative technology rather than independently developing its own products. Luminos Global's

importation, use, sale, and offer for sale of its lighting products infringes JLC's patented LED technology as claimed in at least U.S. Patent Nos. 10,508,805 and 11,732,878. JLC files this suit to stop Luminos Global's continued patent infringement.

4.     On information and belief, Luminos Global is aware of JLC's advertisement materials and copyright portfolio and copied JLC's advertisement materials rather than independently developing its own. Luminos Global's copying infringes JLC's work found in at least JLC's U.S. Copyright Registration Number VA 2-137-244. JLC files this suit to stop Luminos Global's continued copyright infringement.

5.     JLC files this patent and copyright infringement action to end Luminos Global's repeated copying and misuse of JLC's intellectual property rights.

## THE PARTIES

6.     JLC-Tech LLC ("JLC" or "Plaintiff") is a Massachusetts limited liability company, with its principal place of business located at 130 Corporate Park, Pembroke, Massachusetts.

7.     Upon information and belief, Luminos Global, Inc. ("Luminos Global" or "Defendant") is a California corporation, and has a principal address at 750 Design Court, Suite 111, Chula Vista, California 91911. On information and belief, Luminos Global's products are manufactured outside of the United States, shipped into ports in the United States, and subsequently sent to Chula Vista, CA. On information and belief, Luminos Global has been registered to do business in the State of California. Luminos Global has therefore purposefully availed itself of the privilege of conducting business within the State of California and has therefore established sufficient minimum contacts with the State.

1

**JURISDICTION AND VENUE**

2    8.    Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 (federal

3    question), and § 1338 (patents). JLC's claims arise under the patent laws of the United

4    States, including 35 U.S.C. §§ 101 *et seq*. (the Patent Act).

5    9.    The Court has personal jurisdiction over Defendant because it is

6    incorporated in this judicial district, and it has its principal place of business in this

7    judicial district. Upon information and belief, Defendant has also imported, used,

8    sold, or offered for sale its infringing products in California and this judicial district.

9    10.    Upon information and belief, Defendant has committed the tortious acts

10    described in this Complaint in California, and in this judicial district, or otherwise

11    established contacts with this judicial district sufficient to make the exercise of

12    personal jurisdiction proper.

13    11.    Venue is proper in the judicial district pursuant to 28 U.S.C. § 1400(b)

14    because Defendant is a California corporation and thus resides in this judicial district,

15    and because Defendant committed acts of infringement in this judicial district.

16    12.    This action is timely-filed within the appliable statutes of limitation.

17    **FACTUAL BACKGROUND**

18    **JLC's Development of the T-BAR LED®**

19    13.    JLC was founded in 2012 with the goal of creating useful and unique

20    LED lighting fixtures that fully integrate into suspended ceiling systems and double

21    as a light and building element.

22    14.    JLC's founders have more than 50 years of combined experience in the

23    international lighting industry and business management.

24    15.    JLC has invested substantial time, money, and effort developing

25    revolutionary LED lighting fixtures.

26    16.    JLC's flagship product is the T-BAR LED®.

27    17.    An exemplar of the T-BAR LED® product appears below:

28



18. The T-BAR LED® replaces the cross members in a grid ceiling system, allowing for the replacement or omission of the usual fluorescent light fixtures in favor of energy saving LED lights.

19. The T-BAR LED® reduces job site waste, installation labor and materials, and the amount of building materials needed while increasing acoustics and lighting quality in commercial interior spaces.

20. For example, JLC's T-BAR LED®, as installed at the George Bush Intercontinental Airport in Houston, Texas, is depicted below:



**JLC's Intellectual Property**

*Copyrights*

21.   As part of its advertising and marketing efforts, JLC uses photographs and photographic renderings on its website and in physical brochures to advertise and market its T-BAR LED™ product.

22.   One brochure was the "May 2018 T-BAR LED (Linear Lighting) Technical Brochure." JLC published this brochure in May 2018, and JLC used it and many of the rendered photographs contained therein on its website and/or in electronic and physical marketing messaging.  A true and accurate copy of this brochure is attached as Exhibit 1.

23.   On July 18, 2018 the U.S. Copyright Office issued JLC a copyright registration for the work entitled "May 2018 T-BAR LED (Linear Lighting) Technical Brochure," Registration Number VA 2-137-244.  A true and accurate copy of the registration certificate is attached as Exhibit 2.

24.   The brochure identified above will be identified as "JLC Protected Work" in this Complaint.

25.   JLC owns all rights, title, and interest in the copyrights for the JLC Protected Work, including for the rendered photographs, images, and text contained therein.

*Patents-in-Suit*

26.   On December 17, 2019, the United States Patent & Trademark Office duly and legally issued U.S. Patent No. 10,508,805 ("the '805 Patent"), titled "T-Bar for Suspended Ceiling with Heat Dissipation System for LED Lighting".

27.   A true and accurate copy of the '805 Patent is attached as Exhibit 3.

28.   The '805 Patent is valid and its claims enforceable.

29.   JLC is the owner of all rights, title, and interest in the '805 Patent.

30.   JLC has not authorized Defendant or its customers to manufacture, offer to sell, sell, use, or import any product or method covered by the '805 Patent.

31.    On August 22, 2023, the United States Patent & Trademark Office duly and legally issued U.S. Patent No. 11,732,878 ("the '878 Patent"), titled "T-Bar for Suspended Ceiling with Heat Dissipation System for LED Lighting".

32.    A true and accurate copy of the '878 Patent is attached as Exhibit 4.

33.    The '878 Patent is valid and its claims enforceable.

34.    JLC is the owner of all rights, title, and interest in the '878 Patent.

35.    JLC has not authorized Defendant or its customers to manufacture, offer to sell, sell, use, or import any product or method covered by the '878 Patent.

**Defendant's Infringing Conduct**

36.    Upon information and belief, Luminos Global is and has been engaging in activities that infringe JLC's intellectual property rights.

37.    Luminos Global operates a website located at the luminosglobal.com domain.

38.    From this website, Luminos Global offers LED lighting and LED lighting accessories for sale to the public, and will ship orders to customers who purchase items through the website to locations throughout the United States.

39.    On its luminosglobal.com domain, Luminos Global offers a product referred to as the "T-SLIM Series."

40.    Luminos Global hosts a product webpage for the "T-SLIM Series Innovative Linear Light" at https://luminosglobal.com/products/t-slim-series-innovative-linear-light/. A specification sheet promoting the "T-SLIM Series" products is accessible from this product webpage and downloadable as "T-Slim_Series_Spec_Sheet_04-28-23". A true and accurate copy of Defendant's "T-Slim_Series_Spec_Sheet_04-28-23" is attached as Exhibit 5 (last accessed December 30, 2024).

41.    Defendant copied Plaintiff's rendered images and text contained in JLC Protected Work, for its "T-Slim_Series_Spec_Sheet_04-28-23".

42. Defendant's copying, reproduction, distribution, display, creation of derivative works, and use of the rendered images and text is shown below, alongside the corresponding image contained in the JLC Protected Work.

| JLC's Protected Work | Luminos Global's Infringing Use in the "T-Slim_Series_Spec_Sheet_04-28-23" |
|---|---|
| T-BAR LED can be installed in many configurations by replacing any of the cross tees between the main runners of the grid ceiling assembly.<br><br>(JLC's Protected Work, p. 41) | T-SLIM LED can be installed in many configurations by replacing any of the cross tees between the main runners of the grid ceiling assembly. |
| <br><br>(JLC's Protected Work, p. 41) |  |

43.     Upon information and belief, Defendant has and continues to manufacture, offer for sale, sell, import, and/or use, including without limitation, its "T-SLIM Series" linear light (the "T-SLIM") product within and into the United States.

44.     Exemplars of the T-SLIM product as viewed on Luminos Global's website and/or Luminos Global's promotional and/or instructional materials, are shown below:









45.     Upon information and belief, Defendant's T-SLIM Series of linear lights includes, without limitation, T-SLIM products labeled with Model Nos. LGL-T-SLIM-9, LGL-T-SLIM-S, LGL-T-SLIM-I, LGL-T-SLIM-15, and typical options thereof, as viewed on Luminos Global's website and/or Luminos Global's promotional materials, and all other similar products (collectively, the "Accused Products").

46.     True and accurate copies of Defendant's advertisement brochures for its T-SLIM products are attached as Exhibits 5 and 6.

47.     True and accurate copies of Defendant's installation manual for its T-SLIM products are attached as Exhibit 7.

48.     A true and accurate copy of Defendant's advertising brochure for its global offering of products, including T-SLIM products (pages 26-29), is attached as Exhibit 8.

49.     True and accurate copies of Defendant's website are attached as Exhibits 9 and 10.

50.     On its website, Luminos Global offers its Accused Products for sale.

51.     Defendant's website posting is an offer for sale within the meaning of the patent statutes, including 35 U.S.C. § 271.

52.     The Accused Products, and use of the Accused Products, embody the inventions patented in the '805 and '878 Patents.

53.     The Accused Products are not staple articles of commerce.

54.     The Accused Products are not suitable for substantial non-infringing use.

55.     Upon information and belief, Defendant imports the Accused Products into the United States from Shenzhen OKT Lighting Co., Ltd.

56.     Upon information and belief, Luminos Global has also offered for sale and/or sold the Accused Products for uses and/or installations in the United States, including a job named IMI HQ located in Indianapolis, Indiana.

57.     For the reasons set forth herein, upon information and belief, Defendant's Accused Products infringe one or more claims of the '805 Patent, and one or more claims of the '878 Patent.

58.     Luminos Global's conduct caused and will continue to cause JLC irreparable harm, for which it has no adequate remedy at law.

59.     JLC brings this action to recover for the injury and damages Luminos Global has caused it, and to stop Luminos Global from infringing its intellectual property in the future.

**Luminos Global's Infringement is Willful**

60.     JLC's website discloses the patents that cover the commercial embodiments of its inventions.

11

61.    JLC marks its products, including the T-BAR LED® within the meaning of the patent marking statute, including 35 U.S.C. § 287.

62.    JLC's website (https://www.jlc-tech.com/patents/) informs website visitors and users that its T-BAR LED® product is covered by, among others, the '805 and '878 Patents:



63.    Because JLC's website discloses the '805 and '878 Patents, and Defendant, upon information and belief, has viewed portions of JLC's website, Defendant is aware, or should have been aware, of the '805 and '878 Patents.

64.    Defendant has had constructive knowledge of the '805 and '878 Patents at least through JLC's compliance with the marking requirements of 35 U.S.C. § 287 upon each JLC's T-BAR LED® product and JLC's website.

65.    Defendant also has had actual knowledge of the '805 and '878 Patents since at least the date on which Luminos Global received letters sent by JLC's counsel.

66.    Thus, upon information and belief, Defendant's infringement of the'805 and '878 Patents is willful.

67.    Defendant's infringement is further willful because, upon information and belief, Defendant substantially copied JLC's T-BAR LED®.

68.    The Accused Products are especially made or especially adapted for use in an infringement of the '805 and '878 Patents. The Accused Products include LED lighting fixtures configured only for purposes of attachment with grid ceiling installations.

69.    Upon information and belief, Defendant knows that the Accused Products are not staple articles of commerce, are not suitable for substantial non-infringing use, and are especially made or adapted for use in a manner that infringes JLC's patent rights.

70.    Defendant's conduct has injured and damaged JLC and will continue to injure and damage JLC.

**Request for Permanent Injunctive Relief**

71.    JLC has no adequate remedy at law available to stop Luminos Global's continuing unlawful conduct. Unless restrained, Defendant will continue to violate JLC's rights, abuse and dissipate JLC's goodwill, and unlawfully use, possess, and exploit JLC's intellectual property.

72.    Likewise, the balance of the harm favors JLC, and an injunction would be in the public's interest. Luminos Global has willfully engaged in, and upon information and belief, continues to willfully engage in the acts complained of in conscious disregard of JLC's rights.

**FIRST CLAIM**

**COPYRIGHT INFRINGEMENT**

**Infringement of JLC's Protected Works under 17 U.S.C. § 501, et seq.**

73.    JLC incorporates by reference, as if fully set forth herein, Paragraphs 1-72 of this Complaint.

74.    Upon information and belief, Defendant, without license or authorization from JLC, copied, reproduced, distributed, displayed, made derivative works of, and used the photographic renderings contained in the JLC Protected Works, and continues to do so now.

75.    Defendant's wrongful actions described herein constitute multiple violations of 17 U.S.C. § 501, *et seq.*

76.    Upon information and belief, Defendant's copyright infringement was willful because the photographs it copied, reproduced, distributed, displayed, made derivative works of, and used were JLC Protected Works and obtained from Plaintiff's website and/or brochures.

77.    JLC has been injured and damaged, and will continue to be injured and damaged by Defendant's copyright infringement.

78.    JLC has incurred and will continue to incur attorney's fees, costs, and expenses in this action.

## SECOND CLAIM

### PATENT INFRINGEMENT

### Direct and Indirect Infringement of U.S. Patent No. 10,508,805

### ("the '805 Patent") under 35 U.S.C. § 271

79.    JLC incorporates by reference, as if fully set forth herein, Paragraphs 1-78 of this Complaint.

80.    Upon information and belief, Defendant uses, offers for sale, sells, and/or imports the Accused Products into the United States.

81.    Claim 1 of the '805 Patent is set forth as follows:

82.    A T-bar for a suspended ceiling, the T-bar comprising:

83.    an elongated rigid spine extending from a first terminal end to a second terminal end;

84.    a fixed anchor attached to the elongated rigid spine on at least one of the first or second terminal ends;

85.    a lower portion of the elongated rigid spine including a first rest shelf portion and a second rest shelf portion, the first rest shelf portion extending from the elongated rigid spine in a first lateral direction, the second rest shelf portion extending from the elongated rigid spine in a second lateral direction, the second lateral direction being opposite the first lateral direction, the first and second rest shelf portions and elongated rigid spine forming a cross-sectional form of the T-bar from the first terminal end to the second terminal end, the cross-sectional form of the T-bar configured for placement of the suspended ceiling above the lower portion of the elongated rigid spine;

86.    at least one light source adjacent a bottom side of each the first and second rest shelf portion and attached to the first or second rest shelf portion;

87.    a light source covering adapted and configured to cover the at least one light source and to be located below the first and second rest shelf portions, the light source covering configured to allow passage of light illuminating from the light source through the light source covering; and

88.    a first side wall extending downward from a bottom side of the first rest shelf portion and extending from a first terminal end of the first rest shelf portion to a second terminal end of the first rest shelf portion, and a second side wall extending downward from a bottom side of the second rest shelf portion and extending from a first terminal end of the second rest shelf portion to a second terminal end of the second rest shelf portion, the first and second side walls and the bottom sides of the first and second rest shelf portions forming a light housing to contain the at least one light source of the T-bar.

89.    Luminos Global directly and/or indirectly infringes the claims of the '805 Patent, including, but not limited to, claim 1.

90.    Upon information and belief, representative images illustrating examples of the Accused Products offered by Luminos Global are viewed below.

91.    These representative images for the Accused Products are presented with respect to claim 1 of the '805 Patent.

92.    JLC reserves the right to amend/supplement these representative images for the Accused Products with further charts/illustrations for all infringed claims of the '805 Patent, including claim 1 as viewed below.

93.    The Accused Products are T-bars for a suspended ceiling.

94.    Upon information and belief, the Accused Products shown in Exhibit 5 and the accompanying representative image are T-bars for suspended ceilings. The below representative image illustrates one type of the Accused Products, which is available for purchase and suitable for use in a grid ceiling environment (annotations added).





95.    Upon information and belief, the Accused Products as shown below in the accompanying representative image are also T-bars for suspended ceilings. The below representative image illustrates a second type of the Accused Products, which

is available for purchase and suitable for use in a grid ceiling environment (annotations added).



96.    The Accused Products include an elongated rigid spine extending from a first terminal end to a second terminal end.

97.    Upon information and belief, one type of the Accused Products shown in Exhibit 6, and the below accompanying representative image, include an elongated rigid spine extending from a first terminal end to a second terminal end (annotations added).



98.    Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative image, include an elongated rigid spine extending from a first terminal end to a second terminal end (annotations added).



99.    The Accused Products include a fixed anchor attached to the elongated rigid spine on at least one of the first or second terminal ends.

100.    Upon information and belief, the Accused Products shown in Exhibit 7, and the below accompanying representative image, include a fixed anchor attached to the elongated rigid spine on at least one of the first or second terminal ends (annotations added).



101.    Upon information and belief, a second type of the Accused Products, as shown below in the accompanying representative image, include a fixed anchor

attached to the elongated rigid spine on at least one of the first or second terminal ends (annotations added).



102.    The Accused Products include a lower portion of the elongated rigid spine with a first rest shelf portion and a second rest shelf portion, the first rest shelf portion extending from the elongated rigid spine in a first lateral direction, the second rest shelf portion extending from the elongated rigid spine in a second lateral direction, the second lateral direction being opposite the first lateral direction.

103.    Upon information and belief, one type of the Accused Products shown in Exhibit 7, and the below accompanying representative image, includes a lower portion of the elongated rigid spine with a first rest shelf portion and a second rest shelf portion, the first rest shelf portion extending from the elongated rigid spine in a first lateral direction, the second rest shelf portion extending from the elongated rigid spine in a second lateral direction, the second lateral direction being opposite the first lateral direction (annotations added).





104.   Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative images, include a lower portion of the elongated rigid spine with a first rest shelf portion and a second rest shelf portion, the first rest shelf portion extending from the elongated rigid spine in a first lateral direction, the second rest shelf portion extending from the elongated rigid spine in a second lateral direction, the second lateral direction being opposite the first lateral direction (annotations added).



105. The Accused Products further include the first and second rest shelf portions and elongated rigid spine forming a cross-sectional form of the T-bar from the first terminal end to the second terminal end, the cross-sectional form of the T-bar configured for placement of the suspended ceiling above the lower portion of the elongated rigid spine.

106. Upon information and belief, one type of the Accused Products shown in Exhibit 5, and the below accompanying representative image, include the first and second rest shelf portions and elongated rigid spine forming a cross-sectional form of the T-bar from the first terminal end to the second terminal end, the cross-sectional form of the T-bar configured for placement of the suspended ceiling above the lower portion of the elongated rigid spine (annotations added).





107.   Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative image, include the first and second rest shelf portions and elongated rigid spine forming a cross-sectional form of the T-bar from the first terminal end to the second terminal end, the cross-sectional form of the T-bar configured for placement of the suspended ceiling above the lower portion of the elongated rigid spine (annotations added).



108.   The Accused Products include at least one light source adjacent a bottom side of each the first and second rest shelf portion and attached to the first or second rest shelf portion.

109.   Upon information and belief, one type of the Accused Products, as shown below in the accompanying representative image, includes at least one light source adjacent a bottom side of each the first and second rest shelf portion and attached to the first or second rest shelf portion (annotations added).



110.   Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative image, includes at least one light source adjacent a bottom side of each the first and second rest shelf portion and attached to the first or second rest shelf portion (annotations added).



111. The Accused Products include a light source covering adapted and configured to cover the at least one light source and to be located below the first and second rest shelf portions, the light source covering configured to allow passage of light illuminating from the light source through the light source covering.

112. Upon information and belief, one type of the Accused Products shown in Exhibit 7, and the below accompanying representative image, includes a light source covering adapted and configured to cover the at least one light source and to be located below the first and second rest shelf portions, the light source covering configured to allow passage of light illuminating from the light source through the light source covering (annotations added).





113.   Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative images, includes a light source covering adapted and configured to cover the at least one light source and to be located below the first and second rest shelf portions, the light source covering configured to allow passage of light illuminating from the light source through the light source covering (annotations added).



114.  The Accused Products include a first side wall extending downward from a bottom side of the first rest shelf portion and extending from a first terminal end of the first rest shelf portion to a second terminal end of the first rest shelf portion, and a second side wall extending downward from a bottom side of the second rest shelf portion and extending from a first terminal end of the second rest shelf portion to a second terminal end of the second rest shelf portion.

115.  Upon information and belief, one type of the Accused Products shown in Exhibit 7, and the below accompanying representative images, includes a first side wall extending downward from a bottom side of the first rest shelf portion and extending from a first terminal end of the first rest shelf portion to a second terminal end of the first rest shelf portion, and a second side wall extending downward from a bottom side of the second rest shelf portion and extending from a first terminal end of the second rest shelf portion to a second terminal end of the second rest shelf portion (annotations added).



116.  Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative images, includes a first side wall extending downward from a bottom side of the first rest shelf portion and extending from a first terminal end of the first rest shelf portion to a second terminal end of the first rest shelf portion, and a second side wall extending downward from a bottom side of the second rest shelf portion and extending from a first terminal end of the second rest shelf portion to a second terminal end of the second rest shelf portion (annotations added).





117.    The Accused Products further include the first and second side walls and the bottom sides of the first and second rest shelf portions forming a light housing to contain the at least one light source of the T-bar.

118.    Upon information and belief, one type of the Accused Products, as shown below in the accompanying representative image, includes the first and second side walls and the bottom sides of the first and second rest shelf portions forming a light housing to contain the at least one light source of the T-bar (annotations added).



119.   Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative image, includes the first and second side walls and the bottom sides of the first and second rest shelf portions forming a light housing to contain the at least one light source of the T-bar (annotations added).



120.   Thus, under one or more subsections of 35 U.S.C. § 271, Defendant has directly infringed and continues to directly infringe the '805 Patent by making, using,

offering to sell, selling, and/or importing the Accused Products within and into the United States.

121.  Luminos Global's direct infringement of the '805 Patent has caused financial damages to JLC, including for example, lost sales revenue caused by Defendant's sales of the Accused Products

122.  Luminos Global's direct infringement of the '805 Patent has irreparably damaged JLC, including for example, avoiding JLC's right to exclude others from making, using, selling, importing, or offering to sell products embodying the invention patented in the '805 Patent.

123.  Luminos Global's direct infringement of the '805 Patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of this Court.

124.  Luminos Global's lacks a reasonable belief that making, using, selling, importing, or offering to sell the Accused Products in the U.S. does not directly infringe the '805 Patent.

125.  Luminos Global's knowledge of the '805 Patent and lack of reasonable belief that making, using, selling, importing, or offering to sell the Accused Products in the U.S. does not directly infringe the '805 Patent constitutes willful infringement of the '805 Patent.

126.  Upon information and belief, Defendant also indirectly infringes the '805 Patent by contributory infringement in selling and/or offering to sell the Accused Products to its customers because the Accused Products are material to practicing the invention, they have no substantial non-infringing uses, and Defendant knows, or should reasonably know, that the Accused Products are especially made or adapted for use in an infringement of the '805 Patent.

127.  Upon information and belief, Defendant also indirectly infringes the '805 Patent by inducing infringement in aiding, instructing, or otherwise acting with the intent to cause acts by its customers that would constitute direct infringement of

the '805 Patent, Defendant knew of the '805 Patent, or was willfully blind to its existence, Defendant knew or was willfully blind in consciously ignoring the possibility that its actions would infringe at least one claim of the '805 Patent, and Defendant's customers directly infringe at least one claim of the '805 Patent.

128. Luminos Global's indirect infringement of the '805 Patent has caused financial damages to JLC, including for example, lost sales revenue caused by Defendant's sales of the Accused Products

129. Luminos Global's indirect infringement of the '805 Patent has irreparably damaged JLC, including for example, avoiding JLC's right to exclude others from making, using, selling, importing, or offering to sell products embodying the invention patented in the '805 Patent.

130. Luminos Global's indirect infringement of the '805 Patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of this Court.

131. Luminos Global's lacks a reasonable belief that making, using, selling, importing, or offering to sell the Accused Products in the U.S. does not indirectly infringe the '805 Patent.

132. Luminos Global's knowledge of the '805 Patent and lack of reasonable belief that making, using, selling, importing, or offering to sell the Accused Products in the U.S. does not indirectly infringe the '805 Patent constitutes willful infringement of the '805 Patent.

## THIRD CLAIM

### PATENT INFRINGEMENT

### Direct and Indirect Infringement of U.S. Patent No. 11,732,878

### ("the '878 Patent") under 35 U.S.C. § 271

133. JLC incorporates by reference, as if fully set forth herein, Paragraphs 1-132 of this Complaint.

134. Upon information and belief, Defendant uses, offers for sale, sells, and/or imports the Accused Products into the United States.

135. Claim 1 of the '878 Patent is set forth as follows:

136. A T-bar for a suspended ceiling, the T-bar comprising:

137. an elongated rigid spine extending from a first terminal end to a second terminal end;

138. an anchor attached to the elongated rigid spine on at least one of the first or second terminal ends;

139. a lower portion of the elongated rigid spine including a first rest shelf portion and a second rest shelf portion, the first rest shelf portion extending from the elongated rigid spine in a first lateral direction, the second rest shelf portion extending from the elongated rigid spine in a second lateral direction, the second lateral direction being opposite the first lateral direction, the first and second rest shelf portions and elongated rigid spine forming a cross-sectional form of the T-bar from the first terminal end to the second terminal end, the cross-sectional form of the T-bar configured for placement of the suspended ceiling above the lower portion of the elongated rigid spine;

140. a first track slot portion extending downward from the first rest shelf portion;

141. a second track slot portion extending downward from the second rest shelf portion;

142. a lighting module extending from at least the first terminal end to at least the second terminal end of the elongated rigid spine, the lighting module located below the first and second rest shelf portions and held into position below each the first and second rest shelf portions by placement within the first track slot portion and the second track slot portion; and

143.   wherein the lighting module contains a first side rail and a second side rail, the first side rail of the lighting module resting within the first track slot portion and the second side rail resting within the second track slot portion.

144.   Luminos Global directly and/or indirectly infringes the claims of the '878 Patent, including, but not limited to, claim 1.

145.   Upon information and belief, representative images illustrating examples of the Accused Products offered by Luminos Global are viewed below.

146.   These representative images for the Accused Products are presented with respect to claim 1 of the '878 Patent.

147.   JLC reserves the right to amend/supplement these representative images for the Accused Products with further charts/illustrations for all infringed claims of the '878 Patent, including claim 1 as viewed below.

148.   The Accused Products are T-bars for a suspended ceiling.

149.   Upon information and belief, the Accused Products shown in Exhibit 5 and the accompanying representative image are T-bars for suspended ceilings. The below representative image illustrates one type of the Accused Products, which is available for purchase and suitable for use in a grid ceiling environment (annotations added).





150.   Upon information and belief, the Accused Products as shown below in the accompanying representative image are also T-bars for suspended ceilings. The below representative image illustrates a second type of the Accused Products, which is available for purchase and suitable for use in a grid ceiling environment (annotations added).



151.   The Accused Products include an elongated rigid spine extending from a first terminal end to a second terminal end.

152.   Upon information and belief, one type of the Accused Products shown in Exhibit 6, and the below accompanying representative image, include an elongated rigid spine extending from a first terminal end to a second terminal end (annotations added).





153.   Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative image, include an elongated rigid spine extending from a first terminal end to a second terminal end (annotations added).



154.   The Accused Products include an anchor attached to the elongated rigid spine on at least one of the first or second terminal ends.

155.   Upon information and belief, one type of the Accused Products shown in Exhibit 7, and the below accompanying representative image, include an anchor attached to the elongated rigid spine on at least one of the first or second terminal ends (annotations added).



156. Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative image, include an anchor attached to the elongated rigid spine on at least one of the first or second terminal ends (annotations added).



157. The Accused Products include a lower portion of the elongated rigid spine with a first rest shelf portion and a second rest shelf portion, the first rest shelf portion extending from the elongated rigid spine in a first lateral direction, the second

rest shelf portion extending from the elongated rigid spine in a second lateral direction, the second lateral direction being opposite the first lateral direction.

158.    Upon information and belief, one type of the Accused Products shown in Exhibit 7, and the below accompanying representative image, include a lower portion of the elongated rigid spine with a first rest shelf portion and a second rest shelf portion, the first rest shelf portion extending from the elongated rigid spine in a first lateral direction, the second rest shelf portion extending from the elongated rigid spine in a second lateral direction, the second lateral direction being opposite the first lateral direction (annotations added).





159.   Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative images, include a lower portion of the elongated rigid spine with a first rest shelf portion and a second rest shelf portion, the first rest shelf portion extending from the elongated rigid spine in a first lateral direction, the second rest shelf portion extending from the elongated rigid spine in a second lateral direction, the second lateral direction being opposite the first lateral direction (annotations added).





160.   The Accused Products further include the first and second rest shelf portions and elongated rigid spine forming a cross-sectional form of the T-bar from the first terminal end to the second terminal end, the cross-sectional form of the T-bar

38
COMPLAINT AND DEMAND FOR JURY TRIAL

configured for placement of the suspended ceiling above the lower portion of the elongated rigid spine.

161.  Upon information and belief, one type of the Accused Products shown in Exhibit 5, and the below accompanying representative image,  include the first and second rest shelf portions and elongated rigid spine forming a cross-sectional form of the T-bar from the first terminal end to the second terminal end, the cross-sectional form of the T-bar configured for placement of the suspended ceiling above the lower portion of the elongated rigid spine (annotations added).



162.  Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative image, include the first and second rest shelf portions and elongated rigid spine forming a cross-sectional form of the T-bar from the first terminal end to the second terminal end, the cross-sectional

form of the T-bar configured for placement of the suspended ceiling above the lower portion of the elongated rigid spine (annotations added).



163.  The Accused Products include a first track slot portion extending downward from the first rest shelf portion.

164.  Upon information and belief, one type of the Accused Products, as shown below in the accompanying representative image, include a first track slot portion extending downward from the first rest shelf portion (annotations added).



165.  Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative image, includes a first track slot portion extending downward from the first rest shelf portion (annotations added).



166.   The Accused Products include a second track slot portion extending downward from the second rest shelf portion.

167.   Upon information and belief, one type of the Accused Products, as shown below in the accompanying representative image, include a second track slot portion extending downward from the second rest shelf portion (annotations added).



168.   Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative image, includes a second track slot portion extending downward from the first rest shelf portion (annotations added).



169.   The Accused Products include a lighting module extending from at least the first terminal end to at least the second terminal end of the elongated rigid spine.

170.   Upon information and belief, one type of the Accused Products, as shown below in the accompanying representative images, includes a lighting module extending from at least the first terminal end to at least the second terminal end of the elongated rigid spine (annotations added).





171.   Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative images, includes a lighting module extending from at least the first terminal end to at least the second terminal end of the elongated rigid spine (annotations added).





172.    The Accused Products further include the lighting module located below the first and second rest shelf portions and held into position below each the first and second rest shelf portions by placement within the first track slot portion and the second track slot portion.

173.    Upon information and belief, one type of the Accused Products, as shown below in the accompanying representative image, includes the lighting module located below the first and second rest shelf portions and held into position below each the first and second rest shelf portions by placement within the first track slot portion and the second track slot portion (annotations added).



174.    Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative image, includes the lighting module located below the first and second rest shelf portions and held into position below each the first and second rest shelf portions by placement within the first track slot portion and the second track slot portion (annotations added).



175.    The Accused Products include wherein the lighting module contains a first side rail and a second side rail, the first side rail of the lighting module resting

within the first track slot portion and the second side rail resting within the second track slot portion.

176.  Upon information and belief, one type of the Accused Products, as shown below in the accompanying representative image, includes wherein the lighting module contains a first side rail and a second side rail, the first side rail of the lighting module resting within the first track slot portion and the second side rail resting within the second track slot portion (annotations added).



177.  Upon information and belief, the second type of the Accused Products, as shown below in the accompanying representative image, includes wherein the lighting module contains a first side rail and a second side rail, the first side rail of the lighting module resting within the first track slot portion and the second side rail resting within the second track slot portion (annotations added).



178.   Thus, under one or more subsections of 35 U.S.C. § 271, Defendant has directly infringed and continues to directly infringe the '878 Patent by making, using, offering to sell, selling, and/or importing the Accused Products within and into the United States.

179.   Luminos Global's direct infringement of the '878 Patent has caused financial damages to JLC, including for example, lost sales revenue caused by Defendant's sales of the Accused Products

180.   Luminos Global's direct infringement of the '878 Patent has irreparably damaged JLC, including for example, avoiding JLC's right to exclude others from making, using, selling, importing, or offering to sell products embodying the invention patented in the '878 Patent.

181.   Luminos Global's direct infringement of the '878 Patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of this Court.

182.   Luminos Global's lacks a reasonable belief that making, using, selling, importing, or offering to sell the Accused Products in the U.S. does not directly infringe the '878 Patent.

183.   Luminos Global's knowledge of the '878 Patent and lack of reasonable belief that making, using, selling, importing, or offering to sell the Accused Products in the U.S. does not directly infringe the '878 Patent constitutes willful infringement of the '878 Patent.

184.   Upon information and belief, Defendant also indirectly infringes the '878 Patent by contributory infringement in selling and/or offering to sell the Accused Products to its customers because the Accused Products are material to practicing the invention, they have no substantial non-infringing uses, and Defendant knows, or should reasonably know, that the Accused Products are especially made or adapted for use in an infringement of the '878 Patent.

185.   Upon information and belief, Defendant also indirectly infringes the '878 Patent by inducing infringement in aiding, instructing, or otherwise acting with the intent to cause acts by its customers that would constitute direct infringement of the '878 Patent, Defendant knew of the '878 Patent, or was willfully blind to its existence, Defendant knew or was willfully blind in consciously ignoring the possibility that its actions would infringe at least one claim of the '878 Patent, and Defendant's customers directly infringe at least one claim of the '878 Patent.

186.   Luminos Global's indirect infringement of the '878 Patent has caused financial damages to JLC, including for example, lost sales revenue caused by Defendant's sales of the Accused Products

187.   Luminos Global's indirect infringement of the '878 Patent has irreparably damaged JLC, including for example, avoiding JLC's right to exclude others from making, using, selling, importing, or offering to sell products embodying the invention patented in the '878 Patent.

188.   Luminos Global's indirect infringement of the '878 Patent will continue unless enjoined by the Court under 35 U.S.C. § 283 and/or the equitable powers of this Court.

189.   Luminos Global's lacks a reasonable belief that making, using, selling, importing, or offering to sell the Accused Products in the U.S. does not indirectly infringe the '878 Patent.

190.   Luminos Global's knowledge of the '878 Patent and lack of reasonable belief that making, using, selling, importing, or offering to sell the Accused Products in the U.S. does not indirectly infringe the '878 Patent constitutes willful infringement of the '878 Patent.

## **PRAYER FOR RELIEF**

**WHEREFORE,** JLC prays for judgment against Defendant Luminos Global as follows:

A.    Temporarily and permanently enjoin Defendant and any person acting in concert with it from:

a.    further infringement of JLC's copyright in JLC's Works;

B.    Issue an Order prohibiting Defendant from violating JLC's copyrights in the United States;

C.    Require Defendant to remove all images copied and/or derived from the JLC Protected Work from its material(s) and/or any website(s) Defendant controls and/or has the right to control;

D.    Require Defendant to impound and dispose of all materials copied and/or derived from the JLC Protected Work;

E.    Award JLC actual and/or statutory damages for Defendant's infringement of JLC Protected Work pursuant to 17 U.S.C. § 504;

F.    Find that Defendant's infringement of the copyrights for the JLC Protected Works was willful, and award $150,000 statutory damages, or as otherwise permitted under 17 U.S.C. § 504;

G.    Order Defendant to impound and deliver up for destruction all goods, advertising, literature and other forms of promotional material containing JLC Protected Work and/or derived from JLC Protected Work;

H.    Permanently enjoin Defendant Luminos Global and any person acting in concert with it from:

    a.    further infringement of U.S. Patent No. 10,508,805, pursuant to 35 U.S.C. § 283;

    b.    further infringement of U.S. Patent No. 11,732,878, pursuant to 35 U.S.C. § 283;

    c.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraph (a) or (b) above or taking any action that contributes to any of the activities referred to in subparagraph (a) or (b) above;

I.    Issue an Order prohibiting Defendant Luminos Global from:

    a.    making, using, selling, offer for sale, and/or importing into the United States the Accused Products;

    b.    making, using, selling, offering for sale, importing into the United States, or displaying any product that infringes U.S. Patent No. 10,508,805; and,

    c.    making, using, selling, offering for sale, importing into the United States, or displaying any product that infringes U.S. Patent No. 11,732,878.

J.    Finding Defendant Luminos Global has directly and/or indirectly infringed U.S. Patent No. 10,508,805 and that such infringement has been willful;

K.    Finding Defendant Luminos Global has directly and/or indirectly infringed U.S. Patent No. 11,732,878 and that such infringement has been willful;

L.    Require Defendant Luminos Global to forfeit all products that infringe JLC's intellectual property rights to JLC;

M.    Requiring Defendant Luminos Global to remove the Accused Products from its website;

N.   Award JLC actual damages pursuant to 35 U.S.C. § 284 in an amount adequate to compensate for Defendant Luminos Global's infringement of U.S. Patent No. 10,508,805, but in no amount less than a reasonable royalty for the use Defendant has made of JLC's invention;

O.   Award JLC actual damages pursuant to 35 U.S.C. § 284 in an amount adequate to compensate for Defendant Luminos Global's infringement of U.S. Patent No. 11,732,878, but in no amount less than a reasonable royalty for the use Defendant has made of JLC's invention;

P.   Order Defendant, at its own expense, to recall any and all products that bear any simulation, reproduction, copy, colorable imitation, or confusingly similar type of the T-BAR LED® from any distributors, retailers, vendors, or others to whom Defendant has distributed or sold such products, and that such recall notices and other actions be taken within five (5) days after service of judgment with notice of entry thereof;

Q.   Order Defendant to deliver up all Accused Products for destruction;

R.   Order the impounding and destruction of all of Defendant's products that infringe U.S. Patent No. 10,508,805;

S.   Order the impounding and destruction of all of Defendant's products that infringe U.S. Patent No. 11,732,878;

T.   Award JLC treble damages pursuant to 35 U.S.C. § 284;

U.   Find the case to be exceptional pursuant to 28 U.S.C. § 285 and award appropriate relief thereunder;

V.   Award JLC its reasonable attorney's fees;

W.   Award JLC its costs, expenses, and interest;

X.   Order Defendant to report their compliance with the foregoing to the Court within thirty (30) days of judgment; and,

Y.   For such other and further relief that the Court deems just and proper under the circumstances.

1

2   DATED:  January 3, 2025          **THOMPSON COBURN LLP**

3

4

5                                By:    /s/ Lukas Sosnicki
                                     _____
6                                    **LUKAS SOSNICKI**
                                     **MICHAEL L. NEPPLE** (*pro hac vice*)
7                                    **ALAN H. NORMAN** *(pro hac vice)*
                                     **THADDEUS J. BLENKE** *(pro hac vice)*
8                                    Attorneys for Plaintiff
                                     JLC-TECH LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, JLC hereby

3  demands a trial by jury on all issues raised by the Complaint.

4

5  DATED:  January 3, 2025          **THOMPSON COBURN LLP**

6

7

8                                     By:      /s/ Lukas Sosnicki

9                                     **LUKAS SOSNICKI**
                                      **MICHAEL L. NEPPLE** *(pro hac vice)*
10                                    **ALAN H. NORMAN** *(pro hac vice)*
                                      **THADDEUS J. BLENKE** *(pro hac vice)*
11                                    Attorneys for Plaintiff
                                      JLC-TECH LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28