

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JLC-TECH LLC,<br><br>                       Plaintiff,<br><br>v.<br><br>LUMINOS GLOBAL, INC.,<br><br>                       Defendant. | Case No.:  25-cv-15-RSH-JLB<br><br>**ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE DEFENSES**<br><br>[ECF No. 24] |

Before the Court is a motion to dismiss counterclaims and strike defenses filed by plaintiff JLC-Tech LLC. ECF No. 24. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants in part and denies in part Plaintiff's motion.

## I.    BACKGROUND

This instant case is a patent and copyright infringement action arising from plaintiff JLC Tech LLC's patents and copyright pertaining to its T-BAR LED lighting product.

### A.    Plaintiff's Allegations

Plaintiff's Complaint ([ECF No. 1], "Compl.") alleges as follows. Plaintiff is a Massachusetts limited liability company that develops and sells LED lighting fixtures.

Compl. ¶¶ 1, 6. Plaintiff's flagship product, the T-BAR LED, is designed to replace the cross members in a grid ceiling system with LED lights. *Id.* ¶¶ 16–18.

Plaintiff owns U.S. Patent Nos. 10,508,805 ("the '805 Patent") and 11,732,878 ("the '878 Patent") (collectively, the "patents-in-suit"). Both the '805 and '878 Patents are generally directed to a T-bar "for a dropped ceiling which is configured to transfer heat effectively away from T-bar and ceiling mounted light sources and other heat sources, and into a space above a dropped ceiling." '805 Patent at col. 2:41–44; '878 Patent at col. 2:48–52. Additionally, Plaintiff owns a registered copyright to a technical brochure it published in May 2018 for the T-Bar LED product (Registration No. VA 2-137-244). Compl. ¶¶ 22–23.

Plaintiff alleges Defendant's T-SLIM series of linear lights, including Model Nos. LGL-T-SLIM-9, LGL-T-SLIM-S, LGL-T-SLIM-I, and LGL-T-SLIM-15, infringe the '805 and '878 Patents. *Id.* ¶¶ 45, 57. Plaintiff additionally alleges Defendant's advertising materials for its T-SLIM products infringe Plaintiff's registered copyright. *Id.* ¶ 4.

### B.    Defendant's Counterclaim Allegations

The Counterclaims at issue in the instant motion arise from: (1) a series of letters exchanged by Plaintiff and Defendant's counsel regarding Defendant's alleged infringement; and (2) the prosecution of the '805 Patent. ECF No. 17 ¶¶ 106–152.

Defendant alleges as follows. Defendant is a California corporation that has offered lighting solutions since 2014. *Id.* at ¶¶ 2, 9. A number of Defendant's products, including the T-SLIM series of linear lights, are manufactured by a foreign manufacturer, Shenzen OKT Lighting Co., Ltd. ("OKT"). *Id.* ¶ 10.

### 1.    *Correspondence Between Plaintiff and Defendant*

#### a.    *August 2022 Correspondence*

On August 1, 2022, Plaintiff sent Defendant a letter stating it had recently resolved two lawsuits involving the alleged infringement of the '805 Patent, including successfully obtaining a permanent injunction against a distributor of OKT products. ECF Nos. 17 ¶ 11; 17-1 at 2. The letter further stated Plaintiff had obtained a monetary judgment against

another distributor of OKT products for copyright infringement arising from the use of OKT marketing materials. *Id.* The letter cautioned Defendant "to avoid importing, making, selling, or offering for sale any products" that infringed the '805 Patent in the United States. ECF No. 17-1 at 3.

On August 19, 2022, Defendant responded with a letter providing a "cursory" non-infringement analysis that included the '805 Patent, while also stating it preserved the right to conduct an invalidity analysis. ECF Nos. 17 ¶ 12; 17-2.

### b.    *January/February 2023 Correspondence*

Plaintiff, now represented by a different law firm, responded on January 27, 2023. ECF Nos. 17 ¶ 16; 17-3. In its letter, Plaintiff addressed a number of Defendant's non-infringement arguments and demanded that Defendant: (1) cease advertising, selling, distributing or importing the T-SLIM product line; (2) cancel all pending orders of products within that line; (3) identify all distributors, trade outlets, retailers, manufacturers, and suppliers of the line; and (4) provide an accounting of the product line. ECF No. 17-3 at 4. Defendant replied on February 24, 2023, noting Plaintiff had not provided an infringement analysis and providing additional non-infringement arguments. ECF Nos. 17 ¶ 17; 17-4

### c.    *October/November 2023 Correspondence*

Plaintiff responded on October 12, 2023. ECF Nos. 17 ¶ 21; 17-5. Plaintiff's October 12, 2023 letter provided additional detail on its past enforcement actions, asserted Defendant's sale of its T-SLIM series of lights could violate Plaintiff's patent rights, and identified the '805 and '878 Patents as part of its portfolio. *See* ECF No. 17-5.

On November 20, 2023, counsel for Defendant, now also representing OKT on behalf of OKT's customers, sent a response maintaining its non-infringement positions and requested a detailed infringement analysis. ECF Nos. 17 ¶ 22; 17-6. The Parties did not exchange any additional correspondence prior to Plaintiff filing suit.

### 2.    *Prosecution of the '805 Patent*

Defendant alleges Plaintiff purports to own the '805 Patent by assignment from the patent's inventor, Silvio Porciatti. ECF No. 17 ¶ 143. However, Mr. Porciatti's conception

and reduction to practice of patented invention allegedly occurred under circumstances that obligated him to assign the invention to his former employer. *Id.* ¶ 144. Plaintiff alleges that at some point in time, Mr. Porciatti, or the prosecuting attorney of the '805 Patent, Bradley Heisler, submitted a declaration with an improperly redacted "Invention Record" exhibit that allegedly concealed this information from the United States Patent and Trademark Office ("USPTO"). *Id.* ¶¶ 143–45.

### C.    Procedural History

On January 3, 2025, Plaintiff filed the instant action. ECF No. 1. Plaintiff's Complaint asserts three causes of action for: (1) copyright infringement; (2) infringement of the '805 Patent; and (2) infringement of the '878 Patent. *Id.* ¶¶ 73–190. On March 24, 2025, Defendant filed its Answer and Counterclaims raising twenty affirmative defenses and ten counterclaims. ECF No. 17 at 21–25, 31–48.  On April 24, 2025, Plaintiff filed the instant motion to dismiss and strike certain counterclaims and defenses. ECF No. 24. Defendant filed a response and Plaintiff filed a reply. ECF Nos. 28; 33.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

"A motion to dismiss a counterclaim is subject to the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)[.]" *Alvarez v. XPO Logistics Cartage, LLC*, No. 2:18-CV-03736-SJO-E, 2020 WL 1289550, at *1 (C.D. Cal. Feb. 6, 2020). A motion to dismiss under Rule 12(b)(6), in turn, "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleading facts "'merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

## B.    Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a motion to strike is to avoid the expenditure of time and money involved in litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "Motions to strike are generally disfavored[.]" *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (internal quotation marks omitted); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1122 (N.D. Cal. 2013). "As with other challenges to a party's pleading, [w]hen ruling on a motion to strike, th[e] Court must view the pleading under attack in the light most favorable to the pleader." *Doe v. Regents of Univ. of California*, No. 22-CV-1506 JLS (AHG), 2024 WL 171387, at *1 (S.D. Cal. Jan. 16, 2024) (internal quotation marks omitted).

"An affirmative defense may be insufficient as a matter of pleading or as a matter of law." *Roe v. City of San Diego*, 289 F.R.D. 604, 608 (S.D. Cal. 2013). A defense is insufficient as a matter of law "if it clearly lacks merit under any set of facts the defendant might allege." *Doe v. Regents of Univ. of California*, No. 22-CV-1506 JLS (AHG), 2024 WL 171387, at *2 (S.D. Cal. Jan. 16, 2024) (internal quotation marks omitted); *see S.E.C.*

5

*v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995) ("To strike an affirmative defense, the moving party must convince the court that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.") (internal quotation marks omitted), *aff'd sub nom. S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998).

A defense is insufficient as a matter of pleading where "it fails to provide the plaintiff with fair notice of the defense asserted." *Fed. Trade Comm'n v. Green Equitable Sols.*, No. 222CV06499FLAMARX, 2023 WL 7107273, at *1 (C.D. Cal. Sept. 29, 2023). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *see G & G Closed Cir. Events, LLC v. California Ctr. for Arts, Escondido, Found.*, No. 20-CV-2137-JLS (NLS), 2021 WL 1263952, at *2 (S.D. Cal. Apr. 6, 2021) ("[T]his Court now elects to stand with the clear majority of courts within this District and apply the 'fair notice' standard."). "[T]he 'fair notice' required by the pleading standards only requires describing the defense in general terms." *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (internal quotation marks omitted). Under this standard, although a defendant "need not provide a detailed statement of facts" a defendant must "do more than plead the name of a possibly relevant defense or category of defense." *Doe*, 2024 WL 171387, at *3.

## III.    ANALYSIS

Plaintiff moves to dismiss Defendant's counterclaims for: (1) unenforceability due to equitable estoppel; (2) unclean hands; (3) unenforceability due to patent misuse; and (4) unenforceability due to copyright misuse. ECF No. 24-1 at 8–22. Plaintiff further moves to strike Defendant's affirmative defenses corresponding to these counterclaims. *Id.* The Court addresses each of these counterclaims and affirmative defenses, in turn, below.

### A.    Unenforceability Due to Equitable Estoppel

In its Seventh Counterclaim, Defendant asserts Plaintiff's patent infringement claims are barred under the doctrine of equitable estoppel. ECF No. 17 ¶¶ 106–114.

In patent infringement cases, "[w]here an alleged infringer establishes the defense of equitable estoppel, the patentee's claim may be entirely barred." *A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992). "Three elements are required for equitable estoppel to bar a patentee's suit: (1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." *Radio Sys. Corp. v. Tom Lalor & Bumper Boy, Inc.*, 709 F.3d 1124, 1130 (Fed. Cir. 2013). The equitable estoppel defense is a matter committed "to the sound discretion of the trial court." *Fraunhofer-Gesellschaft Zur Förderung Der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, 138 F.4th 1373, 1378 (Fed. Cir. 2025).

### 1.    *Misleading Conduct*

"The first element of equitable estoppel requires [Plaintiff] to have made a misleading communication, either affirmatively or by omission, to [Defendant]." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 767 F.3d 1339, 1349 (Fed. Cir. 2014). "In general, 'silence alone will not create an estoppel unless there was a clear duty to speak,' or unless a patent owner's 'continued silence' reinforces an accused infringer's inference that the patent owner has acquiesced to the infringer's conduct." *Fraunhofer*, 138 F.4th at 1379 (quoting *Aukerman*, 960 F.2d at 1043–44).

In its Counterclaim, Defendant alleges Plaintiff's inaction misled Defendant into believing that Plaintiff did not intend to enforce its patent rights. Specifically, Defendant points to the periods of "inaction" between: (1) Defendant's August 19, 2022 letter and Plaintiff's January 27, 2023 response; (2) Defendant's February 24, 2023 letter and Plaintiff's October 12, 2023 response; and (3) OKT's November 20, 2023 letter and Plaintiff's filing of this suit on January 3, 2025. ECF Nos. 1; 17 ¶ 109. Plaintiff responds the length of time between its responses were not misleading. ECF No. 33 at 5–6.

///

Here, Defendant has set forth a plausible claim it was misled by Plaintiff's "inaction." Plaintiff's January 27, 2023 letter requested that Defendant take a number of specific actions, including to immediately end the "advertising, selling, distributing, and/or importing the accused T-Slim product line[.]" ECF No. 17-3 at 4. The letter further warned that absent compliance, Plaintiff would "take measures and steps as deemed appropriate to bring [Defendant]'s infringing activities to a halt." *Id.* Defendant responded on February 24, 2023 with a non-infringement analysis. *See* ECF No. 17-4.

Over seven months later, on October 12, 2023, Plaintiff sent another letter setting forth its belief Defendant's "sale and offer for sale of the T-SLIM Series lights may violate [Plaintiff's] patent rights." ECF No. 17-5 at 3. OKT's November 20, 2023 letter, on Defendant's behalf, provided an additional non-infringement analysis, and then stated towards the end:

> Notwithstanding the foregoing, if JLC maintains any good faith belief with respect to its allegations (we do not see how it could), we request that you detail your allegations for each infringement claim against each OKT Customer you contend infringes any JLC Patent claim for our consideration, and provide your availability to meet and confer to discuss JLC's claims further. If necessary to avoid costly litigation, OKT also recommends mediating any remaining issues, to the extent there are any.

ECF No. 17-6 at 4.

Rather than responding to Defendant's correspondence, setting up a meet and confer, or potentially mediating the dispute as invited, Plaintiff filed suit on January 3, 2025—over thirteen months later. ECF Nos. 1; 17 ¶ 23.

At this stage, Defendant has plausibly alleged more than silence alone; Defendant alleges Plaintiff threatened enforcement, declined Defendant's invitation to engage in further dialogue or mediation, and then delayed in filing suit for over a year. *See Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010) ("[I]ntentionally misleading silence arises when a patentee threaten[s] immediate or vigorous enforcement of its patent rights but then [does] nothing for an unreasonably long

time.") (internal quotation marks omitted); *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1064 (Fed. Cir. 1995) (noting that "an immediate threat of enforcement followed by silence may be the most common scenario" in which equitable estoppel arises); *Aukerman*, 960 F.2d at 1042 ("In the most common [equitable estoppel] situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years.").

### 2.    Reliance

"Equitable estoppel also requires that material prejudice to the accused infringer be caused by his reliance on the patentee's misleading communication." *SCA Hygiene*, 767 F.3d at 1350. The reliance element is not satisfied where "there is a total absence in the record of any showing" that a defendant's actions "were *in reliance upon* supposed actions of [plaintiff], rather than a business judgment of its own[.]" *Hemstreet v. Comput. Entry Sys. Corp.*, 972 F.2d 1290, 1294–95 (Fed. Cir. 1992) (emphasis in original).

Defendant alleges it relied on Plaintiff's silence in continuing to import, market, offer for sale, and sell its products, including expending "considerable resources" into marketing. ECF No. 17 ¶¶ 25, 110. Plaintiff responds Defendants' decision to continue to market, offer for sale, and sell its products is insufficient to constitute reliance. ECF Nos. 24-1 at 10; 33 at 6–7.

The Federal Circuit's decision in *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995) is instructive here. In *Gasser*, the Court of Appeals held a defendant failed to demonstrate that he acted in reliance on plaintiff's alleged silence where defendant had ignored plaintiff's charges of infringement based on his belief the patent at issue was invalid. *Id.* at 776. The Court of Appeals concluded defendant had not "acted in reliance on supposed actions of [plaintiff]" but rather on his own "business judgment." *Id.*; *see also Vectra Fitness, Inc. v. Icon Health & Fitness, Inc.*, 288 F. Supp. 2d 1155, 1167 (W.D. Wash. 2003) ("Most courts have held that an accused infringer cannot be said to have relied on the patent owner's delay when it acted in the belief that the patent was not infringed."); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 329 F. Supp. 3d 1070, 1112

(N.D. Cal. 2018) (holding reliance element was not met where defendant relied on its own business judgment in developing and commercializing accused product).

Similarly, here, Defendant has not sufficiently alleged how its decision to continue marketing, selling, and offering to sell its T-SLIM series of linear light products was not a consequence of its own business judgment. As detailed above, the record indicates Defendant believed from the outset that its products did not infringe the patents-in-suit. *See* ECF No. 17-2 at 4 ("Even from the foregoing highly cursory non-infringement analysis, it is evident that the accused Luminos products do not come close to infringing your client's patents."); 17-4 at 2 ("We continue to find JLC's allegations completely meritless and borderline frivolous."); 17-6 at 2 ("[M]ultiple elements of the claims of the '805 and '385 patents are simply not practiced by the accused products."). As presently alleged, Defendant's decision to continue its business operations is more consistent with its own belief that the accused products were non-infringing than with any reliance on Plaintiff's alleged silence.

Defendant argues *Gasser* is distinguishable from the case at hand as Defendant's belief in its non-infringement position was based on attorney opinion rather than being "unjustified" as it was in *Gasser*. ECF No. 28 at 15–16. The Court is not persuaded. It is true that the Court of Appeals in *Gasser* specifically noted the defendant had failed to consult an attorney on invalidity. *Gasser*, 60 F.3d at 775–76. This remark, however, took place in the context of discussing willful infringement, not equitable estoppel. *Id.* Defendant also does not explain or provide any legal authority as to why a party's action would qualify as "business judgment" only if undertaken without consulting an attorney. Likewise, Defendant's allegation that it "expended considerable marketing resources into its marketing efforts in reliance on [Plaintiff's] non-response" [ECF No. 17 ¶ 25], is too conclusory to plead a plausible reliance theory.

### 3.    *Materially Prejudiced*

"Finally, the accused infringer must establish that it would be materially prejudiced if the patentee is now permitted to proceed." *Aukerman*, 960 F.2d at 1043. "[T]he prejudice

may be a change of economic position or loss of evidence." *Id.* "[C]ases in which economic prejudice has been found lacking did not so hold because of a lack of capital investments, but, rather, because the alleged infringer failed to prove that their increased expenditures, i.e., on marketing and development, were in any way related to actions taken by the patentee." *ABB Robotics,* 52 F.3d at 1065. Here, as discussed above, Defendant has not sufficiently alleged how any time and money it spent continuing to market, sell, or offer to sell was related to Plaintiff's alleged inaction. *See Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371–72 (Fed. Cir. 2001) (upholding district court's decision as to lack of prejudice where defendant firmly believed from outset that its product was non-infringing).[1]

### 4. Conclusion

For these reasons, the Court **GRANTS** Plaintiff's motion to dismiss Defendant's Counterclaim No. 7.[2] The Court further **GRANTS** Plaintiff's motion to strike Defendant's Affirmative Defense No. 2—to the extent it is based on equitable estoppel—for the same reasons.[3]

---

[1]    Defendant argues it would have diverted resources to marketing and selling other products if Plaintiff had provided a colorable infringement analysis. ECF No. 28 at 17. However, this allegation does not appear anywhere in Defendant's Counterclaim. *See* ECF No. 17. A party may not amend a counterclaim in their opposition brief to a motion to dismiss. *See Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 826 (N.D. Cal. 2018).

[2]    Defendant contends its equitable estoppel counterclaim is directed both to Plaintiff's patent *and* copyright claims. ECF No. 28 at 17. Counterclaim No. 7, however, references Plaintiff's patent claims only. ECF No. 17 ¶¶ 106–14. Regardless, an equitable estoppel counterclaim in the copyright context also requires sufficiently pleading detrimental reliance and Defendant has not done so here. *See Fahmy v. Jay-Z*, No. CV 07-5715 CAS PJWX, 2013 WL 4500435, at *12 (C.D. Cal. Aug. 15, 2013).

[3]    Affirmative Defense No. 2 recites more broadly that: "[s]ome or all of [Plaintiff]'s claims are barred, in whole or in part, by the doctrines of waiver, implied waiver, acquiescence, estoppel, laches, implied license, inequitable conduct, unclean hands, and/or other equitable doctrines." ECF No. 17 ¶ 192. As Plaintiff moves to strike only the portion of Defendant's affirmative defenses that correspond to the challenged counterclaims, the Court does not address the sufficiency of the remainder of Affirmative Defense No. 2.

**B.    Unclean Hands/Inequitable Conduct**

In its Tenth Counterclaim, Defendant alleges the patents-in-suit are unenforceable under the doctrines of unclean hands and inequitable conduct based on a submission made to the USPTO. ECF No. 17 ¶¶ 139–152. Specifically, Plaintiff alleges that the '805 Patent's inventor, Silvio Porciatta, or prosecuting attorney, Bradley Heisler, submitted a declaration with an attachment that redacted information indicating Mr. Porciatta was obligated to assign the '805 Patent to his former employer. *Id.*

**1.    *Unclean Hands***

In patent law, "a determination of unclean hands may be reached when 'misconduct' of a party seeking relief 'has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation,' i.e., 'for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court.'" *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). "To succeed in an unclean hands claim, a plaintiff is required to show that the defendant has engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor." *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1361 (Fed. Cir. 2008) (internal quotation marks omitted). "The trial court has broad discretion under the doctrine of unclean hands." *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1369 (Fed. Cir. 2005).

In this case, Defendant has not alleged *Plaintiff* engaged in egregious conduct; rather Defendant alleges that non-parties Mr. Porciatta or Mr. Heisler acted improperly. The unclean hands doctrine, however, addresses the "misconduct of a party seeking relief." *Luv N' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1094 (Fed. Cir. 2024); *Aptix Corp. v. Quickturn Design Sys.*, 269 F.3d 1369, 1376 (Fed. Cir. 2001) ("[T]he unclean hands doctrine bars only the offending party."); *see also, e.g., Pei-Hreng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1337 (Fed. Cir. 2012) (upholding district court's rejection of unclean hands defense, in part, as defendant failed to "cite any authority supporting the proposition that the conduct

of someone other [than a party] could support an unclean hands claim"); *Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091-CIV, 2008 WL 11333717, at *4 (S.D. Fla. July 22, 2008) ("Such alleged conduct between non-parties cannot support an invocation of the unclean hands doctrine, which aims to balance the equities between the parties to an instant case."). Defendant cites no authority that extends the unclean hands doctrine to the alleged misconduct of non-parties.

Even assuming Mr. Porciatta or Mr. Heisler's actions could somehow be imputed to Plaintiff, the Court is not persuaded that Defendant may maintain an unclean hands defense based on a patent ownership dispute. As the Federal Circuit held in *MyMail, Ltd. v. America Online, Inc.*:

> While it is true that later discovered fraud relating to patent procurement can be raised as a defense in federal court, the same is not true of fraud relating to patent ownership. Fraud in the procurement bears on the enforceability of the patent and thus implicates the public's interest in ensuring that the grant of patent rights is legitimate. Asserting that a third party owns a particular patent, however, is a different matter. *In that case, the enforceability of the patent is not challenged; the only question is one of ownership.*

476 F.3d 1372, 1375–76 (Fed. Cir. 2007) (internal citations omitted) (emphasis added). Here, Defendant's allegations pertain to patent ownership rather than the enforceability of the patents-in-suit. Under *MyMail*, Defendant has not established a proper basis for asserting an unclean hands defense.[4]

### 2. Inequitable Conduct

#### a. Generally

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276,

---

[4] This conclusion is reinforced by the fact that Defendant does not currently challenge that Plaintiff is the owner of the patents-in-suit, making it unclear how Plaintiff could have committed fraud on that basis. ECF No. 28 at 27.

1285 (Fed. Cir. 2011). "A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution." *Dig. Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006); *see Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009). "[I]nequitable conduct regarding any single claim renders the entire patent unenforceable." *Therasense*, 649 F.3d at 1288. "Moreover, the taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family." *Id.*

"[A] counterclaim for inequitable conduct must be pleaded with 'particularity' under Rule 9(b)." *DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, No. 321CV00516RSHDDL, 2023 WL 3442085, at *5 (S.D. Cal. May 12, 2023). "[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. "Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29.

### b.    *Materiality*

"To establish unenforceability based on inequitable conduct in the PTO, it must be shown that information material to patentability was withheld from the PTO, or material misinformation was provided to the PTO, with the intent to deceive or mislead the patent examiner into granting the patent." *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1290 (Fed. Cir. 2012). "[T]he materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose [information]

14

to the PTO, that [information] is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed [information]." *Therasense,* 649 F.3d at 1291.

Here, Defendant has not adequately explained how the information either Mr. Porciatti or Mr. Heisler allegedly withheld was material to patentability. First, Defendant does not sufficiently allege the "when" and the "where" of the alleged misrepresentation. Instead, Defendant's Counterclaim vaguely recites that Mr. Porciatti or Mr. Heisler redacted information material to the ownership of the '805 Patent to an "Invention Record" exhibit filed with the USPTO. ECF No. 17 ¶ 143. It is not clear when and in what context this exhibit was filed.

Defendant has also not sufficiently alleged the "how" of the alleged misrepresentation. The Federal Circuit's decision in *Board of Education v. American Bioscience,* 333 F.3d 1330 (Fed. Cir. 2003) is instructive here. In *American Bioscience,* the district court found inequitable conduct where the co-inventors of a patent did not tell their patent attorney of a fellow co-inventor's former employment at a university. *Id.* at 1337. The Court of Appeals reversed, holding this undisclosed information did not bear on patentability: "[Plaintiff] cites no precedent for a patent being held unenforceable simply because an applicant did not disclose his former employers to the PTO. Who [co-inventor] formerly worked for is more relevant to ownership than to patentability." *Id.* at 1344; *see Filtroil, N.A. v. Maupin,* 20 F. App'x 834, 840 (Fed. Cir. 2001) ("While the [assignment] documents and related information were material to patent ownership, they were not even arguably 'material to patentability. Therefore, the district court's finding of an exceptional case cannot rest on a finding of inequitable conduct.'"). Similarly, here, Defendant has not sufficiently alleged how information regarding Mr. Porciatti's employer at the time the '805 Patent was being prosecuted was material to *patentability*. At most, Defendant's allegations suggest a dispute over ownership.

///

///

///

For these reasons, the Court **GRANTS** Plaintiff's motion to dismiss Defendant's Counterclaim No. 10.[5] The Court **GRANTS** Plaintiff's motion to strike Defendant's Affirmative Defense Nos. 2 and 17—to the extent these defenses are based on unclean hands or inequitable conduct—for the same reasons.[6]

### C.     Unenforceability Due to Patent Misuse

In its Ninth Counterclaim, Defendant alleges the patents-in-suit are unenforceable under the doctrine of patent misuse. ECF No. 17 ¶¶ 128–138.

"Patent misuse is an equitable defense to patent infringement." *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1184 (Fed. Cir. 2005). The doctrine "arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or to coerce an unfair commercial advantage." *C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). The defense is "grounded in the policy-based desire to prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right." *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (internal quotation marks omitted).

---

[5]     As the Court has concluded Defendant has not sufficiently alleged how any of the withheld information was material, it does not reach the Parties' arguments on intent. *See N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 940 (Fed. Cir. 1990) ("Absent materiality, inequitable conduct for failure to disclose can not lie."); *see also Dana Corp. v. NOK, Inc.*, 882 F.2d 505, 508 (Fed. Cir. 1989) (unnecessary for district court to consider intent element of inequitable conduct where it concluded materiality prong had not been met); *Finjan, Inc. v. Juniper Network, Inc.*, No. C 17-05659 WHA, 2018 WL 4181905, at *5 (N.D. Cal. Aug. 31, 2018) (declining to reach allegations regarding intent to deceive whether materiality prong had not been met).

[6]     Affirmative Defense No. 17 recites more broadly that: "[t]he Asserted Patents are unenforceable, in whole or in part, by the doctrines of waiver, implied waiver, acquiescence, estoppel, laches, implied license, inequitable conduct, unclean hands, prosecution laches, patent misuse, and/or other equitable doctrines." ECF No. 17 ¶ 208. Again, the Court does not address the sufficiency of the remainder of Affirmative Defense No. 17, to the extent any of these defenses do not correspond with one of the challenged counterclaims.

"[T]he key inquiry under the patent misuse doctrine is whether, by imposing the condition in question, the patentee has impermissibly broadened the physical or temporal scope of the patent grant and has done so in a manner that has anticompetitive effects." *Id.* "Given that the patent grant entitles the patentee to impose a broad range of conditions in licensing the right to practice the patent, the doctrine of patent misuse has largely been confined to a handful of specific practices by which the patentee seemed to be trying to 'extend' his patent grant beyond its statutory limits." *Id.* at 1329. A holding of patent misuse renders a patent unenforceable. *See C.R. Bard,* 157 F.3d at 1372.

Here, Defendant alleges Plaintiff is engaged in a campaign "to expand its purported intellectual property rights beyond their lawful boundaries, and to secure a monopoly in the lighting industry that extends beyond what is allowable under U.S. copyright and patent laws." ECF No. 17 ¶ 8. Specifically, Defendant alleges Plaintiff lacks any good faith basis to assert the patents-in-suit and is instead attempting to "strong arm" parties with "lesser means"—including Defendant. *Id.* ¶ 27.

"It is not patent misuse to bring suit to enforce patent rights not fraudulently obtained[.]" *C.R. Bard*, 157 F.3d at 1373. Notwithstanding this principle, Defendant contends Plaintiff's suit amounts to patent misuse as: (1) Plaintiff acted with bad faith by filing and maintain this action even after Defendant provided it with its non-infringement analysis; and (2) Plaintiff acted with improper purpose by filing suit against market competitors that have lesser financial means. ECF No. 28 at 18–22. Neither argument is persuasive.

First, Defendant has not sufficiently alleged Plaintiff acted with bad faith. The fact that Defendant furnished a non-infringement analysis does not render Plaintiff's enforcement efforts improper. Nothing in the record indicates Plaintiff agreed with Defendant's analysis; to the contrary, Plaintiff rejected it as flawed. See ECF No. 17-3 at 2 ("Luminos Global is simply incorrect."); *id.* at 3 ("As before, Luminos is simply wrong."). Defendant cites no legal authority holding that a dispute between the Parties as to infringement is sufficient to plead that Plaintiff is acting with bad faith. *See Parallax*

*Grp. Int'l, LLC v. Greatmats.com Corp.,* No. SACV 16–00927–CJC(DFMX), 2017 WL 3453297, at *3 (C.D. Cal. Jan. 11, 2017) ("That [defendant] disagrees with [plaintiff]'s interpretation of its patents may provide grounds to assert non-infringement, but it is insufficient for purposes of pleading patent misuse."). Otherwise, "every successful defense of noninfringement would necessarily result in a finding that a patent was unenforceable due to patent misuse." *Hon Hai Precision Indus. Co. v. Wi-LAN, Inc.*, No. 12 CIV. 7900 SAS, 2013 WL 2322675, at *10 (S.D.N.Y. May 28, 2013).

Second, Defendant has not sufficiently alleged Plaintiff acted with improper purpose. It is true a lawsuit's purpose is improper in the patent misuse context "if its goal is not to win a favorable judgment, but to harass a competitor and deter others from competition, by engaging the litigation process itself, regardless of the outcome." *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed. Cir. 1995). Nevertheless, Defendant's conclusory allegation that Plaintiff is attempting "to secure a monopoly in the lighting industry" without any supporting facts is insufficient to plead improper purpose. *See Nalco Co. v. Turner Designs, Inc.*, No. 13-CV-02727 NC, 2014 WL 645365, at *12 (N.D. Cal. Feb. 19, 2014) (holding defendant had sufficiently pleaded improper purpose based on "factual allegations regarding revenue, market share, and the likely consequence of subjecting [defendant] and its customers to costly litigation").

For these reasons, the Court **GRANTS** Plaintiff's motion to dismiss Defendant's Counterclaim No. 9. The Court further **GRANTS** Plaintiff's motion to strike Defendant's Affirmative Defenses Nos. 16 and 17—to the extent Affirmative Defense No. 17 is based on patent misuse—for the same reasons.

### D.    Unenforceability Due to Copyright Misuse

In its Eighth Counterclaim, Defendant alleges Plaintiff's registered copyright (Registration No. VA 2-137-244) is unenforceable under the doctrine of copyright misuse. ECF No. 17 ¶¶ 115–27.

///

In the Ninth Circuit, misuse is a defense to copyright infringement. *See Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 520 (9th Cir. 1997). The purpose of the doctrine is to prevent "holders of copyrights from leveraging their limited monopoly to allow them control of areas outside the monopoly." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011). "The copyright misuse doctrine does not prohibit using conditions to control use of copyrighted material, but it does prevent copyright holders from using the conditions to stifle competition." *Id.* at 1159. The purpose of the defense is to prevent "holders of copyrights from leveraging their limited monopoly to allow them control of areas outside the monopoly." *Id.* at 1157. The doctrine is applied "sparingly." *Id.*

Here, Defendant's copyright misuse claim rests on its conclusory allegations that: (1) Plaintiff knows certain designs contained in its copyrighted technical brochure are purely functional and not protected under copyright law; and (2) Plaintiff's actions are "designed to obtain an unauthorized exclusive monopoly" over these functional designs. ECF No. 17 ¶¶ 115–27.

Defendant has not sufficiently alleged how Plaintiff is seeking to control areas outside of the copyright grant. "The mere fact that a copyright holder files suit for infringement cannot . . . be the basis for a copyright misuse claim." *Nielsen Co. (US), LLC v. Truck Ads, LLC*, No. 08 C 6446, 2011 WL 221838, at *8 (N.D. Ill. Jan. 24, 2011); *see A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026–27 (9th Cir. 2001) (the ability "to control reproduction and distribution of their copyrighted works" is within the "exclusive rights" of copyright holders); *Open Source Yoga Unity v. Choudhury*, No. C 03-3182 PJH, 2005 WL 756558, at *8–9 (N.D. Cal. Apr. 1, 2005) (holding it was well within defendant's rights as a copyright owner to send cease and desist letters). Again, Defendant cites no legal authority holding that a dispute between the Parties as to infringement is sufficient to state a claim for copyright misuse. Otherwise, every copyright infringement action would give rise to a copyright misuse defense.

///

///

For these reasons, the Court **GRANTS** Plaintiff's motion to dismiss Defendant's Counterclaim No. 8. The Court further **GRANTS** Plaintiff's motion to strike Defendant's Affirmative Defense No. 9 for the same reasons.

### E.    Leave to Amend

Defendant requests leave to amend its counterclaims and affirmative defenses. ECF No. 28 at 33. Plaintiff has not taken a position on whether leave to amend should be granted. *See* ECF Nos. 24-1; 33. Under Federal Rule of Civil Procedure 15(a)(2), the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (internal quotation marks omitted).

Here, Defendant may be able cure a number of the defects identified herein by further amendment. The defects identified as to Counterclaim No. 10, however, are not curable. The issues Defendant raises as to patent ownership do not provide a legally sufficient basis for its claims of unclean hands or inequitable conduct. For these reasons, the Court **GRANTS IN PART** Plaintiff's request for leave to amend with respect the challenged counterclaims and corresponding affirmative defenses with the exception of Counterclaim No. 10 and Affirmative Defenses Nos. 2 and 17.

### F.    Conclusion

For the above reasons, the Court **GRANTS** Plaintiff's motion to dismiss Counterclaims Nos. 7, 8, and 9 and **GRANTS** Plaintiff's motion to strike Affirmative Defenses Nos. 2, 9, 16 and 17 **WITH LEAVE TO AMEND.**

The Court **GRANTS** Plaintiff's motion to dismiss Defendant's Counterclaim No. 10 and motion to strike Defendant's Affirmative Defenses Nos. 2 and 17—to the extent they are based on the same allegations underlying Counterclaim No. 10—**WITHOUT LEAVE TO AMEND.**

///

///

Any amended counterclaims and affirmative defenses must be filed within 14 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: September 24, 2025

Hon. Robert S. Huie
United States District Judge

25-cv-15-RSH-JLB